22 N.J. Super. 121 (1952)
91 A.2d 635
ROY MacLEOD, PLAINTIFF-RESPONDENT,
v.
AJAX DISTRIBUTING COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1952.
Decided October 15, 1952.
*123 Before Judges JAYNE, PROCTOR and SCHETTINO.
Mr. Julius Stein argued the cause for appellant (Messrs. Stein & Feinseth, attorneys).
Mr. Harry V. Osborne, Jr., argued the cause for respondent (Messrs. Osborne, Cornish & Scheck, attorneys).
The opinion of the court was delivered by JAYNE, S.J.A.D.
If we omit, as we shall, from this prefatory statement the competitive rays and shadows of the evidence, it discloses rather distinctly the following facts.
The defendant is engaged in Newark in the business of selling coin automatically operated phonographic music machines popularly called juke boxes. In consequence of some previous negotiations the plaintiff, a resident of Wakefield, Massachusetts, visited one M.J. Gillson on March 15, 1951, at the hotel Parker House in Boston. Gillson was acting in a capacity characterized by the president of the defendant company as a "distributor" of its machines and in one instance in his testimony as its "agent." Whatever may be the discriminative conception of his relationship to the defendant, Gillson's purpose was to sell its machines to the plaintiff.
A printed form entitled "Purchase and Sales Contract" was made applicable in the handwriting of Gillson to the *124 transaction in which the plaintiff purchased and acquired five machines from the defendant, for which he paid the sum of $1,747.50.
The present controversy arises from the dissimilarity in an important respect between the original purchase and sales contract received and accepted by the defendant and the copy delivered by Gillson to the plaintiff. Both bear the signatures of Gillson and of the plaintiff, and both contain the following terms and provisions which deserve quotation:
"Machines will be located in territorial limits of City of Cambridge, Mass. Mr. MacLeod to have exclusive rights.

* * * * * * * *
The purchaser fully understands that this purchase order is complete in itself, and hereby agrees that it cannot be RESCINDED; that it contains all the terms of any agreement or contract between the Purchaser and AJAX DISTRIBUTING COMPANY and that no other inducements have been made to influence this sale and that in the event that this order is accepted by AJAX DISTRIBUTING COMPANY that said Company will be bound only by written or printed terms appearing on the face hereof.

* * * * * * * *
I HAVE READ THIS ORDER THROUGH AND UNDERSTAND ALL ITS TERMS AND CONDITIONS."
It seems evident that after Gillson and the plaintiff had subscribed their signatures and before the plaintiff delivered his check to Gillson in payment of one-half of the purchase price as required, the discussion of the transaction continued with the consequence that Gillson in the space on the face of one copy of the contract immediately following the clause stating that the company would be bound only by written or printed terms appearing on the face of the contract, interlineated the following: "Also condition as stated in rider No. 5089." Gillson thereupon prepared in his handwriting on the correspondence stationery of the hotel and attached to the plaintiff's copy of the contract this so-called rider:
"March 15, 1951
As representative of Ajax Distributing Co. of Newark, N.J. I agree to repurchase route of Music Mite machines of whatever *125 number in the possession of Mr. Roy MacLeod at the end of three months from start of operation, at a price not to exceed original purchase price or less.
 M.J. Gillson
 Rider No. 5089 March 15, 1951"
It was demonstrated by the production of the original contract by the defendant that the interlineation was not made on it, nor was any copy of the rider attached.
On July 26, 1951, the plaintiff's attorney in Massachusetts dispatched a letter to the defendant demanding, inter alia, that the defendant repurchase the five machines from the plaintiff at the price of $1,747.50. The defendant disclaimed any knowledge of the collateral representation to repurchase and in the circumstances it declined to repurchase the machines; hence the prosecution of this action by the plaintiff. In a trial by jury, the plaintiff recovered a judgment against the defendant for $1,747.50 damages.
In the consideration of the character of the cause of action it is significant to observe that the plaintiff does not base his demand for $1,747.50 upon the absence of a valid contract because of a failure of the meeting of the minds of the parties, nor does he erect it upon a rescission and tender the return of the machines, nor does he allege any fraud. And this is so, although his attorney in Massachusetts in his communication to the defendant stated, "Also, it appears obvious that if he (Gillson) did not have the authority to sign the special provisions, he had no authority to sign the agreement."
Implicit in the plaintiff's alleged cause of action is an affirmance of his copy of the contract to which the rider is attached. He alleges a breach of that alleged agreement and by his complaint seeks either the recovery of $1,747.50 as damages, or in the alternative a judgment requiring the defendant specifically to perform the alleged agreement to repurchase.
Motions were made on behalf of the defendant to dismiss the action at the conclusion of the plaintiff's evidence and *126 for judgment for the defendant at the close of the case. The propriety of the denial of the motions is before us for review. The authority of Gillson to obligate the defendant to repurchase the machines is the point debated.
It may be at once resolved that there was no proof adduced of any authority expressly conferred upon Gillson by the defendant to enter into, on its behalf, a collateral, though synchronous, agreement to repurchase the machines. If we entertain the conviction that Gillson was authorized by the defendant to perform the services of a salesman, we must by reason of the collateral and supplementary nature of the promise to repurchase search the transcript of the evidence in quest of some prima facie proof that the defendant by some voluntary act on its part placed Gillson in such a situation that a person of ordinary prudence, conversant with business uses, and the nature of the particular business, was justified by the conduct of the defendant in presuming that Gillson had, beyond the authority to sell, the additional authority to obligate the defendant to repurchase the machines after the expiration of three months. We fail to discover any such evidence.
It is proposed that the authority to bind the seller of personal property to repurchase is impliedly invested in a salesman. We are not persuaded that in the case of a mere salesman such an implication can be recognized as a matter of law.
The editors of American Jurisprudence inform us that:
"It is generally held that an agent who is authorized merely to sell personalty and to collect and turn over the money for the same has not the power to bind the principal by an agreement to repurchase the property, which promise is made by the agent as an inducement to the consummation of the sale." 2 Am. Jur., Agency, sec. 123, p. 101.
In the absence of proof of some business practice or policy in the particular trade, the foregoing rule would seem to be rational and serviceable. Again it may be mentioned that we are not here concerned with the right of a purchaser *127 to rescind in consequence of the influential unauthorized act of the agent.
The final insistence is that if there is a destitution of proof of apparent and implied authority, the judgment may be sustained upon the existence of ratification by the defendant. To ratify means to approve and sanction. It presupposes knowledge or at least some alerting circumstantial information of the unauthorized action.
We have searched the transcription of the evidence in vain to discover any proof tending to disclose that before the acceptance of the contract in the composition in which it was submitted to the defendant and before the delivery of the machines and the receipt of the purchase price, the defendant had any hint or intimation of the supplemental agreement to repurchase the machines.
We agree that where the agent has exceeded his authority, the principal cannot enforce the contract and repudiate the unauthorized act of the agent in obtaining it. Obviously that is not the pattern of the present case. Conversely, here, where the agent has exceeded his authority without the knowledge and approbation of his principal, the purchaser cannot enforce the contract.
Whether in the present case the defendant might have contemplated the existence of an unknown incidental agreement to repurchase would be in the state of the evidence solely a subject of surmise and conjecture. In the absence of any oppugnant inference, it would be logically inferred that the defendant naturally placed reliance upon the provisions of the original manuscript of the contract wherein the supplemental agreement was not mentioned and assurance was given that the plaintiff had read it, understood all of its terms and conditions and that it contained all of the terms of the agreement between him and the company. Indeed, the trial judge did not in his instructions submit the question of ratification to the jury.
It seems perfectly apparent from an examination of the evidence that due to the inadvertence or the chicanery *128 of Gillson, the plaintiff and the defendant company never united in the consummation of a mutual agreement unless, speaking in terms of the law, there was proof of the apparent or implied authority of Gillson to obligate the defendant to fulfill the accessory agreement to repurchase. In our opinion there was a lack of such proof and where, as here, the evidence with its logical inferences is undisputed and fails to disclose the requisite authority of the agent, it was the duty of the trial judge to determine the issue and declare the judgment which the law imposes. Hudson, &c., Loan Ass'n., Inc. v. Horowytz, 116 N.J.L. 605, 608 (Sup. Ct. 1936); Kaufman v. Pennsylvania Railroad Co., 2 N.J. 318, 324 (1949).
We are aware that the complaint contains allegations that the machines were worn by previous usage and deficient in operation and that the covenant concerning the plaintiff's exclusive territorial rights was violated. Anent the latter allegation we invite attention to the letter of acceptance (Exhibit D-1) written by the defendant on March 26, 1951. We were led to believe by our colloquy with counsel at the conclusion of the argument that if a reversal of the recovery based on the repurchase agreement should eventuate, a remand of the action for a new trial of the issues last mentioned was not sought or desired.
Accordingly, the judgment under review is reversed with the direction that judgment be entered in favor of the defendant. No costs.